UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE QUINTERO,<br><br>                             Plaintiff,<br><br>v.<br><br>CITY OF ESCONDIDO, NATHAN VISCONTI, DYLAN BOYLAN, ZACHARY PERKINS, et. al.,<br><br>                            Defendant. | Case No.: 15-cv-2638-BTM-BLM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT [DOCS. 13, 15] |

Plaintiff Jorge Quintero ("Plaintiff") brings this action against the City of Escondido (the "City") and Escondido Police Department ("EPD") Officers Nathan Visconti ("Officer Visconti"), Dylan Boylan ("Officer Boylan"), and Zachary Perkins ("Officer Perkins") (collectively "Defendants"). Plaintiff asserts a total of six causes of action against Defendants: (1) a 42 U.S.C. section 1983 claim against the officers; (2) a section 1983 *Monell*[1] claim against the City; (3) negligence; (4) battery; (5) false arrest; and (6) a California Civil Code § 52.1 civil rights violation. (Compl. ECF No. 1.)

---

[1] *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978).

On September 8, 2016, Defendants filed a motion for summary judgment on all claims.  (Defs.' Mot. for Summ. J. ("Defs.' MSJ") ECF No. 13.)   On September 9, 2016, Plaintiff filed a cross motion for summary judgment as to the section 1983 claims asserted against Officer Visconti only.  (Pl.'s Mot. for Summ. J. ("Pl.'s MSJ") ECF No. 15.)  For the reasons discussed below, Defendants' motion is denied in part and granted in part, and Plaintiff's motion is denied.

## I. BACKGROUND

**A. Plaintiff's Apartment**

On December 6, 2014, at approximately 11:12 p.m., EPD Officers were dispatched to Plaintiff's apartment.  (Notice of Lodgment in Support of Defs.' MSJ ("NOL"), Ex. 13 ("Defs. Visconti's Dep."), 33:17–24, 35:16–18).  The officers received the following information over the radio call:  "This will be a female from the apartment screaming and pounding on the door asking to call 9-1-1. She's back inside her apartment now. She'll be Hispanic, 5' 6'' black hair.  Uh, 1301 Morning View Drive, and this will be actually the apartment below and to the right facing 604."  (NOL, Ex. 11 (Tr. of EPD dispatch radio communication)).

Officer Visconti was the first to arrive at the apartment complex approximately 7–8 minutes after the radio call.  (Visconti's Dep. 34:21–25.)  Upon arriving, Officer Visconti made contact with a woman standing on a balcony who he believed was the reporting party.  (Defs. Visconti's Dep. 40:16–24.)  The woman pointed down further north in the complex and signaled to Plaintiff's apartment.  (Defs. Visconti's Dep. 41:9–14.)  Officer Visconti approached the apartment and stood near the doorway to see if he could hear anything from inside.  (Defs. Visconti's Dep. 43:2–6.)  After hearing nothing, he walked away from the doorway and waited for other officers to arrive.  (Defs. Visconti's Dep. 43:9–18.)  Shortly thereafter, Officers Perkins, Boylan and Boylan's training officer, Ryan Vanzandt arrived.  (NOL, Ex. 14 ("Boylan's Dep."), 22:4–5).

At this point, three separate body cameras worn by Officers Visconti,

Perkins and Boylan captured the following: When Officer Perkins, Boylan and Vanzandt met with Officer Visconti, he informed them that a woman pointed out Plaintiff's apartment but that he had not heard anything. (NOL, Ex. 1, ("Visconti's B.C. Video").) Officer Visconti proceeded to knock on the door. (Id.) Plaintiff opened the door while holding his son in his arms. (Id.) Immediately after Plaintiff opened the door, Officer Visconti announced that they were police officers. (Id.) Officer Visconti asked Plaintiff how he was doing and asked him to step outside of his apartment. (Id.) Plaintiff initially agreed and took a step forward, but stopped just before reaching the doorway. (NOL, Ex. 5, ("Boylan's B.C. Video").) Officer Visconti then commanded Plaintiff to step outside, but Plaintiff refused and stated "na, I'm good right here bro." (Id.) Officer Visconti began approaching Plaintiff and responded, "okay." (Id.)

While stepping on the apartment's threshold with his left foot, Officer Visconti reached through the doorway and placed both of his hands on Plaintiff's right bicep. (Id.) He again commanded that Plaintiff step outside and began to pull Plaintiff's right arm, leaving only his left arm free to hold his son. (Id.) Plaintiff, now standing perpendicular to the door frame with his left foot in the apartment and his right food outside, shifted back into the apartment and asked to put his son down to which Officer Visconti responded "no." (NOL, Ex.3, ("Perkins' B.C. Video").) Officer Visconti positioned himself behind Plaintiff and placed his left hand on Plaintiff's left side while using his right hand to pull Plaintiff's right arm. (Id.) As Officer Visconti pulled him outside, Plaintiff's son, who was sitting on Plaintiff's left arm, fell backwards into the apartment on the tile floor from about a height of four to five feet. (Boylan's B.C. Video.)

Officer Vanzandt then entered the apartment and checked on Plaintiff's son and Officer Perkins proceeded to the back of the apartment where he found Plaintiff's wife in the bedroom. (Id.; Perkin's B.C. Video) Meanwhile, Officer

15-cv-2638-BTM-BLM

Visconti and Boylan placed Plaintiff in handcuffs. (Id.) After handcuffing Plaintiff, Officer Visconti commanded him to take a seat twice. (Id.) Plaintiff remained standing and moved his fingers to the inside of his boxer shorts. (Id.) Plaintiff stated, "[l]et me pull my boxers up." (Id.) Officer Visconti again commanded him to take a seat, but Plaintiff did not move and kept his fingers inside his boxer shorts. (Id.) As Plaintiff repeated, "let me just pull up my boxer shorts," Officer Visconti flipped Plaintiff on his back. (Id.) Officer Visconti then yelled: "[t]ake a seat. Listen to me when I tell you what to do." (Id.) Plaintiff responded: "[a]lright man. Relax, bro. I'm not resisting arrest. I'm not. Can I sit up, please?" (Id.) Officer Visconti helped Plaintiff sit up and asked if he had any weapons. (Id.) Plaintiff said he did not. (Id.) Officer Visconti subsequently searched Plaintiff and found a knife in his pocket. (Id.)

**B. Plaintiff's Arrest**

Plaintiff was arrested and booked on charges of felony child abuse/endangerment, in violation of California Penal Code § 273.5(a)), and resisting, obstructing, or delaying an officer's investigation, in violation of California Penal Code § 148. (NOL, Ex. 16, 6 ("Arrest Report").) The District Attorney filed these charges as misdemeanors but eventually dismissed all of them. (Pl.'s MSJ 8.)

## **II. STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for

a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 323.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

To establish a violation under section 1983, Plaintiff must prove that

15-cv-2638-BTM-BLM

Defendants acted under the color of state law and in doing so, deprived him of his constitutional rights.  *West v. Atkins*, 487 U.S. 42, 48 (1988)

## A. § 1983 Claims Asserting Fourth Amendment Claims—Qualified Immunity

Plaintiff alleges that Defendants, namely Officer Visconti, Boylan, and Perkins, violated his Fourth Amendment rights by unlawfully entering his home, performing an unlawful seizure and arrest, using excessive force, and maliciously prosecuting him.  (Compl. ¶¶ 19–24.)

Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity attempts to balance two important interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Because qualified immunity is an immunity from suit, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Id.* at 231–232.  To determine whether a police officer is entitled to qualified immunity, a court must consider whether: (1) the officer's conduct violated a constitutional right; and (2) that right was clearly established at the time of the incident.  *Id.* at 232.  Courts, however, are not required to address the two questions in any particular order.  *Id.* at 243.

As to the second prong, the Supreme Court has held that an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate."  *City & Cnty. Of San Francisco v. Sheehan*, __ U.S. __, 135 S.Ct. 1765, 1774 (2015) (citations

omitted). Just recently the Supreme Court reiterated the "longstanding principle that clearly established law should not be defined at a high level of generality," but instead "must be particularized to the facts of the case." *White v. Pauly*, 2017 __ U.S. __, 137 S.Ct. 548, 552 (2017). A court denying qualified immunity must effectively "identify a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the Fourth Amendment." *Id.* at 552. "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Sheehan*, 135 S.Ct. at 1774 (citations omitted).

Whether a reasonable officer could have believed that his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed. *LaLonde*, 204 F.3d at 953. "However, a trial court should not grant summary judgment where there is a genuine dispute as to 'the facts and circumstances within an officer's knowledge' or 'what the officer and claimant did or failed to do.'" *Id.* (quoting *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)).

### 1. Unlawful Detention

#### a. Doorway Exception

The Fourth Amendment protects individuals from unreasonable searches and seizures. *Payton v. New York*, 445 U.S. 573, 585 (1980). The Supreme Court has held that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court for the Eastern District of Michigan, et. al.*, 407 U.S. 297, 313 (1972). As such, it has adhered to the basic principle that searches and seizures inside a home without a warrant are presumptively unlawful. *Payton*, 445 U.S. at 587. The Court in *Payton* held that the Fourth Amendment explicitly prohibits police from making a warrantless and nonconsensual entry into a

suspect's home in order to make an arrest.  *Id.* at 576.  There, the Court drew a firm line at the entrance of a home, holding that absent exigent circumstances or consent, "that threshold may not reasonably be crossed without a warrant."  *Id.* at 590.

Here, there is no dispute that the officers acted without a warrant.  Instead, Defendants argue that the doorway exception articulated in *United States v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007) allowed Officer Visconti to detain Plaintiff and move him out of his apartment in connection with the *Terry*[2] stop. (Defs.' MSJ 10.)  The Court agrees with Defendants that based on the third-party 911 call, Officer Visconti had reasonable suspicion to detain Plaintiff and investigate whether an incident had occurred. However, after reviewing the relevant case law, the Court finds that the Constitution did not permit Officer Visconti to reach through the doorway and grab Plaintiff while he stood inside his apartment.

In *Crapser*, the police had reasonable suspicion to believe that an individual occupying a motel room was involved in manufacturing methamphetamine.  *Id.* at 1143.  The police approached the motel room and knocked on the door.  *Id.*  In response, a woman and the defendant came out and closed the door behind them.  *Id.*  After speaking with the defendant for several minutes, he unexpectedly pulled a syringe from his right back pocket.  *Id.* The police subsequently searched him and found three to four additional syringes and a small bag containing methamphetamine.  *Id.*  The police arrested him for possession of controlled substance.  *Id.* at 1145.  On appeal, the defendant argued that a *Terry* stop could not occur "at" a person's residence.  *Id.* at 1148.  The Ninth Circuit disagreed and held that when a suspect voluntarily opens the door of his residence in response to a non-coercive "knock and talk,"

_____

[2] *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

the police may temporarily seize the suspect outside the home, or at the threshold, provided that they have reasonable suspicion of criminal activity. *Crapser*, 472 F 3d. at 1148. However, the Ninth Circuit explicitly reaffirmed that "*Terry* does not apply *inside* a home." *Id.* at 1149. It stated:

> There is a critical difference, however, between the inside of the home and the outer threshold and beyond . . . . That difference is the suspect's expectation of privacy. When Defendant opened the motel room door and came outside, he surrendered his heightened expectation of privacy and the Fourth Amendment protections that go along with it—including the right not to be detained based on reasonable suspicion.

*Id.*

Defendants rely on *Crapser* to justify Officer Visconti reaching through the doorway to detain Plaintiff. However, the Court finds this case to be distinguishable from the facts in *Crapser*. The defendant in *Crapser* opened the door, came outside, and closed the door before the police seized him. The police detained him outside of his motel room, where he did not benefit from a heightened expectation of privacy. Here, because Plaintiff refused to step outside, Officer Visconti reached through the doorway and into the apartment to pull him out. While Defendants argue that the detention took place at the doorway, a review of the body camera videos, specifically Officer Boylan's video, reveals that Plaintiff was not standing in the doorway, but rather just inside the apartment when Officer Visconti grabbed him. The act of grabbing Plaintiff's arm converted the situation into a detention. *See United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("[A] a person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained."). The fact that only Officer Visconti's arms crossed the threshold to reach Plaintiff is not significant because Plaintiff was nevertheless standing within his home when Officer Visconti grabbed him. *See United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980) ("[I]t is the location of the arrested person, and not the arresting

15-cv-2638-BTM-BLM

agents, that determines whether an arrest occurs within a home.").  The

detention therefore took place inside Plaintiff's home, where he remained

protected by the warrant requirement.  *See Payton*, 445 U.S. at 587.

It is also worth noting that this case differs from those cases cited in

*Crapser* in that none of the arrests or detentions in those cases took place inside

the home.  In *United States v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir. 1995), the

police did not enter the suspect's home until after they formally placed him under

arrest.  Similarly in *United States v. Gori*, 230 F.3d 44, 53 (2d. Cir. 2000), the

officers never crossed the threshold of the apartment to seize the plaintiffs, but

instead ordered them to step outside after they opened the door of the

apartment.  Lastly, in *United States v. Santana*, 427 U.S. 38, 40 n.1, 43 (1976),

the defendant was "standing directly in the doorway" when the police first saw the

defendant.  It was under those circumstances that the Supreme Court held that

no warrant was required to arrest her because she was exposed to public view,

speech, hearing and touch as if she had been standing completely outside her

house.  *Id.* at 42.  However, the Supreme Court recognized that the warrant

requirement was triggered when the officers crossed the threshold of her home

to arrest her inside.  *Id.* at 42–43.  In light of the entry, the Supreme Court

ultimately relied on the exigent circumstances exception to justify the officers'

warrantless entry into her home.  *Id.* at 42–43.

The facts of this case are instead more analogous to those in *LaLonde v.

County of Riverside*, 204 F.3d 947 (9th Cir. 2000).  There, the officers responded

to the plaintiff's apartment in regard to a noise complaint.  *Id.* at 951.  The

plaintiff's roommate opened the door and spoke with an officer who asked if the

plaintiff was there.  *Id.*  The plaintiff walked into the officers' view, but remained

inside the apartment and did not at any time approach the doorway.  *Id.*  The

officers asked the plaintiff to step outside, but he refused their requests.  *Id.*

Despite the lack of a warrant and absent exigent circumstances, the officers

entered his home and placed the plaintiff under arrest for obstructing a police investigation. *Id.* 951–52. In holding that the arrest violated the Fourth Amendment, the Ninth Circuit rejected the argument that the doorway exception applied. *Id.* at 955. It stated:

> The Fourth Amendment's prohibition on warrantless entry into an individual's home does not apply to arrests made at the doorway, because the doorway is considered a public place. In the present case, however, neither party contends that the officers attempted to arrest LaLonde at the doorway. While the officers were standing at the doorway, they sought to ask LaLonde, who was standing a few feet inside the apartment, some questions about a disturbing the peace complaint. The arrest took place only after the officers had crossed the threshold of the door and entered LaLonde's apartment. Thus the case does not fall under the doorway exception.

Id. at 955.

Here, as discussed above, Officer Visconti detained Plaintiff while he stood inside his home. The Court is aware of no case that extends the doorway exception to allow police officers to reach across the threshold to detain an individual inside his home. Because the Ninth Circuit is clear that *Terry* does not apply inside a home, Plaintiff's detention does not fall under the doorway exception. *Crasper*, 472 F.3d at 1149.

The Court therefore finds that Officer Visconti violated the Fourth Amendment by reaching through the doorway to detain Plaintiff inside his apartment. A finding of the contrary would effectively push back the firm line drawn in *Payton. See Payton*, 445 U.S. at 589.

### b. Clearly Established Law

Notwithstanding the constitutional violation, Plaintiff's claim only survives qualified immunity if the court can "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White*, 137 S.Ct. at 552.

As discussed above, the Ninth Circuit in *Lalonde* held that the case did not fall under the doorway exception and was thus unconstitutional because "[t]he arrest took place only after the officers had crossed the threshold of the door and entered Lalonde's apartment." *Lalonde*, 204 F.3d at 955. Similarly in *United States v. Quaempts*, 411 F.3d 1046, 1048 (9th Cir. 2005), the Ninth Circuit reaffirmed that to "extend the holding of *Vaneaton* beyond the threshold into the interior of the home would do violence to the principles laid down in *Payton* that established a zone of privacy inside the physical dimensions of one's home." The defendant in *Quaempts* lived in a small trailer home and was lying in bed when he reached over to open the door for the police officers. *Id.* at 1047. When the defendant opened the door, the officer from outside the trailer told him he was being placed under arrest. The defendant was therefore inside his home when the officers arrested him. *Id.* Relying on the fact that the defendant "did not take himself outside the physical zone of privacy of the house by going to the threshold of his house or to any other public place," the court held that the officers performed an unlawful arrest inside his home. *Id.* at 1049.

Finally in *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980), the Ninth Circuit held that the warrantless arrest of the defendant, while he stood within his home, constituted a violation of his Fourth Amendment rights. After finding that the arrest occurred as the defendant stood within his home at the doorway, the court turned to whether the arrest of the defendant violated his Fourth Amendment rights. *Id.* at 756. The Court reasoned:

> This case, on the other hand, differs from both of the situations addressed in *Payton*. The illegal search of Payton's home and the illegal arrest of Riddick did not occur until the police had entered the suspect's homes. In this case, we are confronted with the situation where the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons. In these circumstances, it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home. Otherwise, arresting officers could avoid

15-cv-2638-BTM-BLM

illegal "entry" into a home simply by remaining outside the doorway and controlling the movements of suspects within through the use of weapons that greatly extend the "reach" of the arresting officers.

*Id.* at 757.

It is thus clearly established that law enforcement officers cannot break the threshold of a home to detain or arrest an individual who is standing inside his home. The Court finds that these cases involve similar enough circumstances to put Officer Visconti on notice that reaching across the threshold to detain Plaintiff inside his home is unconstitutional. Officer Visconti is therefore denied qualified immunity as to the unlawful detention. However, as discussed below, because the officers are entitled to qualified immunity as to the warrantless entry under the emergency aid doctrine, Officer Visconti's detention of Plaintiff in connection with that entry is also shielded from liability.

### 2. Unlawful Entry

#### a. Emergency Aid Doctrine

Defendants alternatively argue that Plaintiff's detention and warrantless entry into Plaintiff's apartment was reasonable pursuant to the emergency aid doctrine. (Defs.' MSJ 13.) Defendants assert that the officers had reasonable grounds to believe that there was an immediate need to enter the apartment to protect a woman that had been screaming outside for someone to call 911. (Defs.' MSJ 14.) Additionally, they argue that they had the authority to detain Plaintiff while they conducted a protective sweep of the apartment.

A warrantless entry of a home is justified under the emergency aid exception when: "(1) considering the totality of circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the manner and scope of the search were reasonable to meet the need." *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008). Under the first prong, the Government is

required "to point to specific and articulable facts which, taken together with rational inferences from those facts, (would) reasonably warrant (the warrantless) intrusion." *United States v. Dugger*, 603 F.2d 97, 99 (9th Cir. 1979). The Ninth Circuit has made it clear, that "if police officers otherwise lack reasonable grounds to believe there is an emergency, they must take additional steps to determine whether there is an emergency that justified entry in the first place." *Hopkins v. Bonvicino*, 573 F.3d 752, 765 (9th Cir. 2009).

Here, Defendants argue that the third-party 911 call coupled with Plaintiff's behavior, namely his refusal to step outside[3], amounted to reasonable grounds to believe that a woman inside could have been injured or that there was an ongoing threat to her safety. (Defs.' MSJ 9.)

Defendants rely on *United States v. Brooks*, 367 F.3d 1128 (9th Cir. 2004), to argue that in light of the potential domestic abuse, the officers had reasonable grounds to believe there was an emergency. (Defs.' MSJ 15.) In *Brooks*, the police responded to the plaintiff's hotel room in response to a 911 call placed by a neighboring hotel guest who reported hearing what she thought were sounds of a woman being beaten in the plaintiff's room. 367 F.3d at 1130. When the police arrived, the responding officer met with the guest that placed the call and had the opportunity to assess her credibility. *Id.* at 1134. The Ninth Circuit noted that when the officer knocked on the plaintiff's hotel room door, the guest's story was corroborated. *Id.* The officer heard the plaintiff say, "[h]oney, I think somebody is here," which the court found likely indicated to the officer that a woman was inside. *Id.* When the plaintiff opened the door, the officer did not see the woman, but the plaintiff stated he knew why the officer was there and confirmed that there had been, at least, a loud argument. *Id.* Based on these facts—the 911 call

---

[3] As discussed below, Plaintiff's refusal to step outside cannot be used as evidence of criminal wrongdoing. *See United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978).

alerting police to a perceived domestic abuse and corroborating facts known to the officer—the Ninth Circuit held that it was objectively reasonable for the officer to believe that the woman might have been in danger. *Id.* at 1136.

Here, unlike in *Brooks*, there was nothing to corroborate the 911 call. Officer Visconti made contact with a woman he believed was the caller, but never spoke to her or took the opportunity to confirm that she was the caller or assess her credibility. When Officer Visconti approached Plaintiff's apartment, there were facts to dispel the emergency. He approached the door, heard nothing and retreated to wait for the other officers. When Plaintiff opened the door, he and his son appeared calm and peaceful. There was nothing that indicated or confirmed that a domestic dispute occurred minutes before the officers arrived or that there was an emergency at hand. Unlike in *Brooks*, Plaintiff did not confirm that his girlfriend was in the apartment or that a dispute had occurred.

This case also differs from other cases involving 911 calls reporting incidents of domestic violence in that here, the officers relied on nothing more than the third-party 911 call. For example, in *United States v. Black*, 482 F.3d 1035, 1039 (9th Cir. 2007), the Ninth Circuit found reasonable grounds to support an entry where the police was dispatched to the defendant's apartment in response to a 911 call placed by the defendant's girlfriend who had been beaten up by the defendant that morning inside the apartment. She reported that he had a gun and that she intended to return to the apartment to retrieve her belongings—a fact the Ninth Circuit found notable given that the officers knew she would be there and reasonably inferred should could still be in the apartment in need of medical help. *Id.* at 1040. In *United States v. Martinez*, 406 F.3d 1160, 1163–64 (9th Cir. 2005), the court upheld a warrantless entry into the defendant's home where the police responded to a disconnected 911 call concerning domestic violence. The officer recognized the address as a residence he had visited on a previous occasion when a male hit a female and

caused her a "fat lip." *Id.* at 1162–63. Additionally, upon arrival the officer heard yelling from inside the home. *Id.* at 1163. Lastly, in *United States v. Snipe*, 515 F.3d 947, 949 (9th Cir. 2008), the Ninth Circuit found a reasonable basis for believing there was an immediate need to protect individuals after police received a 5:00 a.m. call from an unidentified hysterical male demanding someone "get the cops over here now." The call was disconnected and two police officers were dispatched to the home where the call originated. *Id.* One of the police officers lived down the street and saw a vehicle he did not recognize parked outside and someone walking into the house. *Id.* Both officers also noted that unlike other homes in the area, that residence's lights were on and the front door was ajar. *Id.*

The Ninth Circuit has "never suggested that a suspicion of 'domestic violence' alone provides justification for a given police intrusion." *Thomas v. Dillard*, 818 F.3d, 864, 882 (9th Cir. 2016). In light of the totality of circumstances, the Court finds that the uncorroborated third-party 911 call alone was not enough to support a reasonable belief that there was an emergency at hand. The officers' entry into Plaintiff's apartment and the detention in connection with the entry and search were therefore unlawful.

### b. Clearly Established Law

Despite the Court's finding of a constitutional violation, Plaintiff's claim does not survive qualified immunity. The Court's independent research has not revealed a case—binding at the time of the entry—that held that a 911 call alone is insufficient to support a reasonable basis for believing there is an emergency at hand. Though the Ninth Circuit in *United States v. Harris*, No. 15-10023, 2016 WL 930546, at *2 (9th Cir. Mar. 11, 2016) recently held that emergency circumstances did not exist where the only material fact of which the police were aware of at the time the alleged victim answered the door was that a 911 call had been placed about a domestic violence incident, it had not been decided at the

time of the entry.  Thus, it cannot be said that a reasonable officer would have known that the conduct at issue was unlawful under clearly established law. Moreover, it is not sufficiently established whether officers can detain occupants of a premises while they enter pursuant to the emergency aid doctrine.  While the Supreme Court in *Michigan v. Summers*, 452 U.S. 692, 699 (1981) held that officers acting pursuant to a search warrant are also limitedly authorized "to detain occupants of the premises while a proper search is conducted," it is unclear whether this extends to emergency aid situations.  Therefore, this issue is not placed beyond debate.  *See Sheehan*, 135 S.Ct. at 1774.

Accordingly, Defendants are entitled to qualified immunity on this unlawful entry and unlawful detention claim and Defendants' motion for summary judgment on these issues is **GRANTED**.  Plaintiff's motion for summary judgment as to the unlawful entry and detention is **DENIED**.

### 3. Unlawful Arrest

Plaintiff also alleges that Defendants violated the Fourth Amendment because they lacked probable cause to arrest him.  (Compl. ¶ 20.)  Defendants argue that the officers had probable cause to arrest Plaintiff under both California Penal Code sections 148(a)(1) and 273a.  (Defs.' MSJ 16.)

"A claim for unlawful arrest is cognizable under section 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir 2015).  Probable cause to arrest exists when "officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested."  *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008).  The determination of probable cause is based on the totality of circumstances known to the officers at the time of the arrest.  *Velazquez*, 793 F.3d at 1018.  In the
//

context of qualified immunity, whether an officer had probable cause to support an arrest is a legal question to be determined by the court. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009).

### a. California Penal Code § 148(a)(1)

The elements of a section 148(a)(1) violation are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties; and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Velazquez*, 793 F.3d at 1018.

Defendants argue that the officers had probable cause to arrest Plaintiff because he refused lawful commands to step outside from the open doorway when he knew or should have known that the officers were police officers. (Defs.' MSJ 17.) In response, Plaintiff makes several arguments. First, he disputes that he resisted Officer Visconti's efforts to guide him outside, arguing that he was instead just attempting to put his son down. (Pl.'s Opp'n 9.) Second, he argues that it is well settled that he could not be arrested for simply invoking his constitutional rights. (Pl.'s Opp'n 10.)

The Ninth Circuit has held that a "passive refusal to consent to a warrantless search or seizure is privileged conduct which cannot be considered as evidence of criminal wrongdoing." *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978) (holding that an individual cannot be penalized for passively asserting his Fourth Amendment right regardless of her motivation)*; see also People v. Wetzel*, 11 Cal. 3d 104 (1974) (holding that the defendant was unlawfully arrested for passively asserting her Fourth Amendment rights and denying police officers entry into her home, despite their right to enter in connection with a hot pursuit). Therefore, Plaintiff's verbal refusal to step outside cannot amount to probable cause to justify an arrest under section 148(a)(1).

Defendants argue that *Wetzel* or *Prescott* do not apply to the facts of this

case because here, Plaintiff "physically resisted" Officer Visconti's efforts to "guide" him outside of his apartment. (Defs.' Opp'n to Pl.'s MSJ 21, ("Defs.' Opp'n"), ECF No. 17.) When Officer Visconti placed his hands on Plaintiff's arm, Plaintiff adjusted his footing—a reasonable reaction given that he was holding his son in his arms. Even if Plaintiff did "physically resist," he did not *forcibly* resist Officer Visconti. *C.f. Gulliford v. Pierce Cnty*, 136 F.3d 1345, 1347 (9th Cir. 1998) (finding that the appellant passively resisted arrest by intentionally falling to a sitting position and refusing to comply with an order to stand and put his hands behind his back). The Court therefore finds that Plaintiff, like the defendants in *Wetzel* and *Prescott*, at most, passively resisted Officer Visconti and as such, his arrest for asserting his Fourth Amendment right is unlawful.

### b. California Penal Code § 273

Defendants also argue that the officers had probable cause to arrest Plaintiff under section 273a. Section 273(a) provides: "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, (1) willfully causes or permits any child to suffer, or (2) inflicts thereon unjustifiable physical pain or mental suffering, or (3) having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or (4) willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years." § 273a(a). The statute prohibits "both active and passive conduct, i.e. child abuse by direct assault and child endangering by extreme neglect." *People v. Valdez*, 27 Cal. 4th 778, 784 (2002).

The requisite mental state depends on whether the infliction of physical pain or mental suffering on a child was "direct" or "indirect." *Id.* at 788–89. Active conduct, or "direct" infliction, requires a mental state of general intent. *Id.* However, "indirect" infliction of physical pain or mental suffering only requires a

15-cv-2638-BTM-BLM

mental state of criminal negligence.  *Id.* at 788.  Criminal negligence involves a higher degree of negligence than is required within a civil context.  *Id.*  "The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life . . . or an indifference to consequences."  *Id.*

Here, Defendants argue that they had probable cause to arrest Plaintiff because it was reasonable to believe that he intentionally dropped his son. (Defs.' MSJ 19.)  They argue that "[p]hysically resisting a police officer while holding a child is clearly a reckless act."  (Def.s' MSJ 20.)  However, given the totality of circumstances, the Court finds that the officers had no probable cause to arrest Plaintiff for felony child abuse.  Plaintiff answered the door while holding his son in his arms.  He was not combative, aggressive or resistive; he merely chose to assert his Fourth Amendment rights and remain within his apartment. When Officer Visconti ignored his privileged conduct and attempted to pull him out of his apartment, Plaintiff asked Officer Visconti whether he could place his son down.  Officer Visconti replied no.  Only after Officer Visconti placed his hands on Plaintiff and attempted to "guide" him out of his apartment did Plaintiff's son fall backwards.  Given these facts, the officers had no probable cause to support Plaintiff's arrest for felony child abuse.

"Even if the arrest was made without a warrant and without probable cause, however, the officers may still be immune from suit if it was objectively reasonable for him to *believe* that he had probable cause."  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1078 (9th Cir. 2011).  Thus, in determining whether qualified immunity applies, the question is whether "all reasonable officers would agree that there was no probable cause in this instance."  *Id.* Plaintiff has failed to identify a case in which officers acting under similar

15-cv-2638-BTM-BLM

circumstances violated a constitutional right. The Court's extensive independent research has also not revealed such a case. Moreover, the officers could have misperceived Plaintiff's actions, a mistake the law protects under qualified immunity. *See Sheehan*, 135 S.Ct. at 1774.

For these reasons, the Court finds that the law was not clearly established with respect to the unlawful arrest. The Court therefore **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment as to Officer Visconti.

### 3. Excessive Force

Under the Fourth Amendment, police may use "only such force as is objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994). Whether the force used by an officer was excessive, and thus an unreasonable seizure in violation of the Fourth Amendment, is determined by balancing "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In weighing governmental interests, the Ninth Circuit has typically considered: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Green v. City & County of San Francisco*, 751 F.3d 1039, 1050 (9th Cir. 2014). "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Id.* at 1049 (citations omitted).

Defendants argue that for Officer Visconti to safely search Plaintiff for weapons and prevent flight or further resistance, it was reasonable to bring him to a sitting position. (Defs.' MSJ 22.) Plaintiff, however, did not pose an immediate threat to the officers' safety, since he was already handcuffed when

Officer Visconti forced him to the ground.  Though the crime at issue was felony child abuse, the alleged danger had terminated.  As to the nature of the intrusion, a dispute of material fact remains.  Plaintiff argues that Officer Visconti violently slammed him onto the ground.  (Pl.'s Opp'n 16.)  Defendants, on the other hand, argue that Officer Visconti merely brought Plaintiff backwards over his leg to bring him to the ground.  (Defs.' Opp'n 23.)  Additionally, Plaintiff disputes that he was resisting Officer Visconti's commands to sit down, arguing that he was instead attempting to pull up his boxer shorts.  (Id.)  Defendants, on the other hand, argue that Plaintiff deliberately failed to comply with Officer Visconti's three separate commands to sit.  (Defs.' MSJ 22.)  These factual disputes preclude a determination on summary judgment that the force used was objectively reasonable under the circumstances.

Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's excessive force claim and both Defendants' and Plaintiff's motions for summary judgment are **DENIED**.

### 4. Malicious Prosecution

In order to succeed on a malicious prosecution claim under section 1983, the plaintiff must show: (1) tortious conduct under the elements of state law; and (2) intent to deprive the individual of a constitutional right.  *Poppell v. San Diego*, 149 F.3d 951, 961 (9th Cir. 1998).  In California, a plaintiff may demonstrate malicious prosecution by showing that the underlying prosecution was: "(1) commenced by or at the direction of the defendant and pursued to a legal termination in plaintiff's favor; (2) brought without probable cause; and (3) was initiated with malice."  *Zamos v. Stroud*, 32 Cal. 4th 958, 965 (2004).

Defendants move for summary judgment on Plaintiff's malicious prosecution claim.  Plaintiff alleges that by filing false or inaccurate police incident reports, Plaintiff was charged with false criminal violations and subjected to malicious prosecution.  (Compl. ¶ 22.)  Defendants argue that Plaintiff was

arrested with probable cause.  (Defs.' MSJ 23.)  As already discussed above, the officers did not have probable cause to arrest Plaintiff.  However, they negate the existence of malice by arguing that any contention that the officers hid the circumstances of the arrest is contradicted by videos obtained from their body cameras.  (Defs. MSJ 23.)  In his Opposition, Plaintiff does not address or submit evidence to create a genuine issue of disputed fact as to malice.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution is **GRANTED**.

**C. Monell Claim**

Plaintiff also moves against the City for its unlawful policies including its failure to properly hire and train its police officers, as well as condoning the use of unnecessary and unjustified force.  (Compl. ¶¶ 26–29.)

Municipalities are considered "persons" under section 1983 and therefore can be held liable for causing a constitutional deprivation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Municipalities, however, cannot be held liable under a theory of *respondeat superior*.  *Id.* at 691.  Instead, municipal liability under section 1983 requires a plaintiff to prove that an official municipal policy caused the constitutional violation.  *Monell*, 436 U.S. at 694.  "[I]n order to establish an official policy or custom sufficient for *Monell* liability, a plaintiff must show a constitutional violation resulting from (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a 'final policymaker.'"  *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82.  If an officer's conduct was unconstitutional, and if it was based on a city's official policy, the city can be held liable for a violation of the plaintiff's constitutional rights even when the officer is granted qualified immunity.  *Huskey v. City of San Jose*, 204 F.3d 893, 902–904 (9th Cir. 2000).  However, where no injury or constitutional deprivation has occurred, a city or municipality cannot be held liable.  *Jackson v.*

15-cv-2638-BTM-BLM

*City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). Ordinarily, whether a policy or custom exists is a question for the jury. *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). "However, when there is no genuine issue of material fact and the plaintiff has failed to establish a prima facie case, disposition by summary judgment is appropriate." *Id.*

Defendants move for summary judgment on Plaintiff's *Monell* claim, solely arguing that there was no underlying deprivation of any rights. (Defs.' MSJ 23.) However, as discussed above, the Court finds that the officers did violate Plaintiff's Fourth Amendment rights. Therefore, the City is not entitled to summary judgment on the *Monell* claim and Defendants' motion as to this claim is **DENIED**.

**D. State Law Claims**

In addition to the federal causes of action, Plaintiff alleges state law claims against all Defendants for negligence, battery, false arrest/imprisonment, and violation of California Civil Code § 52.1.

### *1.* Negligence

It appears that Plaintiff rests his negligence claim on the same conduct as his section 1983 claims. (Compl. ¶¶ 30–32.) Defendants seek summary judgment on this claim arguing that even if the officers were negligent, they are immune from liability under California Government Code sections 821.6 and 815.2(b). (Defs.' MSJ 24.)

California Government Code section 821.6 provides immunity to a public employee who caused an injury "by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The "principal function" of section 821.6 is "to provide relief from malicious prosecution." *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007). The Ninth Circuit recently considered the scope of section 821.6. *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847

(9th Cir. 2016). While it acknowledged that California Courts of Appeal have interpreted section 821.6 more expansively, the Ninth Circuit determined that the California Supreme Court would continue to limit its application to claims of malicious prosecution. *Id.* As such, it held that a district court erred in dismissing state law claims that were not malicious prosecution claims based on immunity under section 821.6. *Id.* Therefore, here, section 821.6 does not shield the officers from liability for a negligence claim.

California Government Code section 815.2(b) provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." A public entity's immunity therefore follows its employee's immunity. *Garmon*, 828 F.3d at 847. The officers are not immune from liability, and in turn, neither is the City.

Thus, Defendants' motion for summary judgment as to Plaintiff's negligence claim is **DENIED**.

### *2. Battery*

Under California law, the law governing a claim for battery is the same as that used to analyze a claim for excessive force under the Fourth Amendment. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274–75 (1998). A police officer in California may use reasonable force to make an arrest. *Id.* at 1272–73. Therefore, a plaintiff must prove that unreasonable force was used. *Id.* at 1273. Plaintiff rests his battery claim particularly on "the acts of grabbing [his] right arm and kicking the back of his legs . . . ." (Compl. ¶ 34.) As discussed above, there are key disputed facts that preclude summary judgment on Plaintiff's section 1983 excessive force claim. Consequently, summary judgment is not appropriate with respect to Plaintiff's battery claim.

Defendants' motion for summary judgment on this claim is, therefore, **DENIED**.

### *3.* **False Arrest**

15-cv-2638-BTM-BLM

False imprisonment is the "nonconsensual, intentional confinement of a person, without lawful privilege, for any appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994). Under California law, the tort of false arrest and imprisonment are considered one in the same, because "false arrest is but one way of committing false imprisonment." *Collins v. San Francisco*, 50 Cal. App. 3d 671, 673 (1975). A police officer who makes an arrest without a warrant or probable cause may be held civilly liable for false arrest of imprisonment. *Dragna v. White*, 45 Cal. 2d 469, 471 (1955).

Plaintiff rests his claim for false arrest and/or imprisonment on the same conduct underlying his false arrest under his section 1983 claim. Defendants move for summary judgment on Plaintiff's state claim by arguing that they are immune because probable cause existed for the arrest. (Defs.' MSJ 24.) As discussed above, the officers did not have probable cause to arrest Plaintiff under California Penal Code section 273.5(a)) or section 148.

Thus, Defendants' motion for summary judgment on Plaintiff's state law false arrest claim is **DENIED**.

### *4.* California Civil Code § 52.1

California Civil Code section 52.1, otherwise known as the Bane Act, allows an individual to bring civil action for interference with his rights under the United States or California Constitutions by threats, intimidation, or coercion. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1239 (2007).

Plaintiff's claim against all Defendants under section 52.1 arises from his unlawful entry, seizure and excessive force claims under the United States and California Constitutions. (Compl. ¶ 10.) Defendants move for summary judgment on this claim solely on the grounds that Defendants did not interfere with Plaintiff's rights. (Defs.' MSJ 25.) However, as discussed above, Defendants did violate Plaintiff's Fourth Amendment right by unlawfully entering his home and arresting him without probable cause.

Accordingly, Defendants' motion for summary judgment is **DENIED**.

**E. Claims against Officers Boylan and Perkins**

Lastly, Defendants argue that all causes of action against Officers Boylan and Perkins should be dismissed because they did not personally participate in the actions complained of. (Defs.' Reply 9.)

An officer's liability under section 1983 is predicated on his "integral participation" in the alleged violation. *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996). "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004). "But it does require some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn*, 485 F.3d 481 n. 12.

As discussed above, the Court has already granted summary judgment as to Plaintiff's section 1983 unlawful entry, unlawful arrest, and malicious prosecution claims. As to Plaintiff's section 1983 excessive force claim, the videos show that Officer Visconti alone used force to bring Plaintiff to the ground. Neither Officer Perkins nor Officer Boylan assisted him in doing so. As such, they were not integral participants of the alleged use of excessive force and cannot be held liable. Accordingly, Officers Boylan and Perkins are granted summary judgment on Plaintiff's section 1983 excessive force claims. For similar reasons, they are also granted summary judgment on Plaintiff's state law battery claim.

As to Plaintiff's California false arrest claim, the record is unclear as to what role Officers Perkins and Boylan played in the arrest. Therefore, Defendants have not carried their burden of demonstrating an absence of material dispute of fact. Consequently, Officers Boylan and Perkins are denied summary judgment on Plaintiff's state law false arrest claim.

//

# IV. CONCLUSION

For the reasons discussed above, the Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The Court **ORDERS** as follows:

1. Officers Visconti, Boylan, and Perkins are granted summary judgment with respect to Plaintiff's section 1983 unlawful detention, unlawful entry, unlawful arrest and malicious prosecution claims.

2. Officers Boylan and Perkins are granted summary judgment with respect to Plaintiff's section 1983 excessive force claim and state law battery claim.

3. Defendants' motion is **DENIED** as to all remaining issues.

4. Plaintiff's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 11, 2017

_____
Barry Ted Moskowitz, Chief Judge
United States District Court

15-cv-2638-BTM-BLM